UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 2:20-cv-14069-KAM

AURELIO PEREZ, JR.,

    Plaintiff,

vs.

POP FLORIDA PROPERTIES, LLC, a
foreign limited liability company,

    Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT

This Cause is before the Court upon Plaintiff Aurelio Perez, Jr.'s Motion to Remand to State Court [DE 7] arguing Defendant's Notice of Removal was untimely. Defendant filed a Response in Opposition [DE 8]. Plaintiff filed a Reply in Support [DE 12]. The Court has carefully considered the matter and is fully advised in the premises.

I.   BACKGROUND

On March 4, 2020, Defendant filed a Notice of Removal [DE 1]. This slip-and-fall action was originally filed by Plaintiff on July 2, 2019 in the Tenth Judicial Circuit in and for Highlands County, Florida. [DE 1-1 at 2-4]. Plaintiff's Complaint does not plead a specific amount of damages, but alleges the damages exceeded $15,000.00. [DE 1-1 at ¶ 1].

Defendant based the Notice of Removal on receipt of the medical records and bills totaling $169,111.44, sent via email on February 3, 2020. [DE 8 at 1-2; DE 1-2 at 2]. Accordingly, Defendant argues the Notice of Removal filed on March 4, 2020 was timely, as it was filed within

30 days of receiving Plaintiff's medical bills and records and within one year of Plaintiff filing his Complaint on August 2, 2019. [DE 8 at 2; DE 1 at ¶ 11].

Plaintiff filed the instant Motion to Remand to State Court arguing the Notice of Removal was untimely. [DE 7]. Plaintiff insists the February 3rd email was not the earliest communication from which Defendant could ascertain the amount in controversy and that the case was removable. [*Id.* at 2]. Plaintiff asserts Defendant was first made aware that the amount in controversy exceeded $75,000 when Plaintiff's attorney emailed Defendant's attorneys on January 21, 2020, writing in part:

> In light of our agreement, I will hold off on answering the pending discovery, but I am sending you the medical records, bills, and a medical bill table so the parties may begin exploring the possibility of settlement. **While the current known medical expenses total approximately $168,000 per my current medical bill table (to be produced shortly), it is my understanding that Mr. Perez Jr. is scheduled to undergo another surgery**. As a result, the medical expenses are expected to increase significantly in the near future. Upon review of the file, please let me know if your client would like to explore the possibility of early resolution.

[*Id.*; DE 1-2 at 5].

## II. APPLICABLE LAW

"Title 28 U.S.C. § 1332(a) vests a district court with subject matter jurisdiction when the parties are diverse and the amount in controversy 'exceeds the sum or value of $75,000, exclusive of interest and costs.'" *Lambertson v. Go Fit, LLC*, 918 F. Supp. 2d 1283, 1284 (S.D. Fla. 2013). Generally, a Notice of Removal must "be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading" or "within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). However:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion,

2

order or **other paper** from which it **may first be ascertained that the case is one which is or has become removable**.

28 U.S.C. § 1446(b)(3) (emphasis added).

The Eleventh Circuit has opined on the parameters of "other paper":

What constitutes "other paper," however, has been developed judicially. Courts have not articulated a single test for identifying "other paper," but numerous types of documents have been held to qualify. They include: responses to request for admissions, *Wilson v. Gen. Motors Corp.,* 888 F.2d 779, 780 (11th Cir.1989); settlement offers, *Addo v. Globe Life & Accident Ins. Co.,* 230 F.3d 759, 761–62 (5th Cir.2000); interrogatory responses, *Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1036 (10th Cir.1998); deposition testimony, *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996); demand letters, *Williams v. Safeco Ins. Co.,* 74 F.Supp.2d 925, 929 (W.D.Mo.1999); and **email estimating damages**, *Callahan v. Countrywide Home Loans, Inc.,* No. 3:06–105, 2006 WL 1776747, at *3–*4 (N.D.Fla. June 26, 2006).

*Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007) (emphasis added). Whatever form they come in, "the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." *Id.* at n.63.

This Court has held that "[t]he definition of 'other paper' is broad and may include any formal or informal communication received by a defendant. *Wilson v. Target Corp.*, 2010 WL 3632794, at *2 (S.D. Fla. Sept. 14, 2010). "Documents qualifying as 'other paper' trigger the time period for removal when they result from 'a voluntary act of plaintiff' and make it clear that federal jurisdiction exists." *Id.*

"Once a state court defendant has exercised his right to seek removal under 28 U.S.C. § 1446(a) a state court plaintiff may seek remand within thirty days after the filing of the notice of removal noting any defect with the removal." *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004). "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

III. DISCUSSION

Plaintiff contends the January 21st email is the first instance of "other paper" that should begin the 30-day countdown, rather than the subsequent February 3rd email of medical records and bills that Defendant relied on, because it was an "email establishing damages, resulting from a voluntary act of Plaintiff, and containing an unambiguous statement that clearly establishes federal jurisdiction." [DE 12 at 3-4].

Defendant responds that the January 21st email was in the context of "beginning to explore the possibility of early settlement between the parties," and that "Plaintiff's counsel did not specifically discuss the amount of damages he was seeking or the amount in controversy." [DE 8 at 1]. Defendant argues that the February 3rd email was proper to rely on because the first email was just an approximation of medical expenses, whereas the second email with bills attached "unequivocally confirmed" the amount in controversy. [*Id.* at 2]. Defendant argues this instance is analogous to another case where a court found an email discussing settlement negotiations was posturing and not a reliable indicator of damages to trigger the 30-day clock.

Plaintiff points to *Barton v. Hurricane Associates, LLC*, where the court found that a preliminary email estimating damages constituted "other paper" even where emails sent shortly after were the communications that confirmed the amount. *Barton v. Hurricane Assocs., LLC*, 2016 WL 6123371, at *1 (M.D. Fla. Oct. 20, 2016). There, the first email sent by plaintiff's counsel on July 1 "advised that it 'will be no secret that we believe our claim has a value in excess of $75,000, since the medical bills have exceeded that amount.'" *Id.* Then, "[c]onsistent with the July E-Mail, . . . Plaintiff produced discovery to Defendants on July 7 and July 17 ("Discovery"), which confirmed that [amount-in-controversy] in the State Action exceeds $75,000.00." *Id.* (emphasis omitted). The court rejected defendants' arguments that the first email was inadequate

4

to trigger the 30-day clock and that they did not have sufficient notice of the amount in controversy until receiving the discovery. *Id.* at *2. The court reasoned "viewed in context, the July E-Mail was an 'other paper from which' Defendant could have ascertained that the case was one which had 'become removable.'" *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

That strikes the Court as precisely what occurred here. The January 21st email was even more unambiguous and specific in communicating the damages than the email the court accepted in *Barton*. Plaintiff's counsel here stated "[w]hile the current known medical expenses total approximately $168,000 per my current medical bill table (to be produced shortly), it is my understanding that Mr. Perez Jr. is scheduled to undergo another surgery. As a result, the medical expenses are expected to increase significantly in the near future." [DE 1-2 at 5]. Plaintiff's communication was not speculative and put Defendant on notice about the amount in controversy.

Nevertheless, Defendant contends that emails in the course of settlement agreements should be viewed differently. In *Towers of Oceanview S. Condo. Ass'n, Inc. v. Great Am. Ins. Co. of New York*, the court explained "[i]n determining whether settlement correspondence meets this threshold, the Court is mindful that, often, 'a settlement demand provides only marginal evidence of the amount in controversy because the plaintiff's letter is nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages sought by the plaintiff.'" *Towers of Oceanview S. Condo. Ass'n, Inc. v. Great Am. Ins. Co. of New York*, 2014 WL 4376147, at *3 (S.D. Fla. Sept. 4, 2014) (hereinafter "*Towers*") (quoting *Hall v. State Farm Mut. Auto. Ins. Co.,* 2014 WL 2987678, at *2 (M.D. Fla. July 2, 2014)) (quotations omitted).

There, the court found the email "to be more in line with an invitation to enter into settlement talks than an accounting of Plaintiff's damages" because Plaintiff wrote "'the repairs

appear to be in the range of $80,000", but offers no basis for this figure." *Towers*, 2014 WL 4376147, at *3 (citation omitted). However, there, the preliminary email was much more vague: "'I cannot give you an exact demand at this time because the building is still in the process of repairs.'" *Id.* at *1. Additionally, because the "email references past talks of settling the case and invites Defendant to resume settlement discussions," the court concluded, "[t]he $80,000 figure Plaintiff cites therefore seems more likely to be settlement posturing than the 'honest assessment' of damages required for the email to serve as a basis for removal." *Id.* (quoting *Golden v. Dodge-Markham Co.*, 1 F. Supp. 2d 1360, 1364 (M.D. Fla. 1998)).

In contrast, while the January 21st email references settlement negotiations, the Court finds this was an "honest assessment" and "a reliable indicator" of damages based on medical bills that were to be sent to Defendant shortly. As *Towers* noted "'[o]n the other hand, settlement offers that provide specific information ... to support [the plaintiff's] claim for damages suggest the plaintiff is offering a reasonable assessment of the value of [his] claim and are entitled to more weight.'" *Id.* at *3 (quoting *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009)). Moreover, the $80,000 estimate in *Towers* hovered near the $75,000 threshold, whereas the estimate of $168,000 far surpassed it, and the email noted Plaintiff was scheduled to undergo another surgery, further notifying Defendant that damages would only increase. Also, given that "settlement offers" are a quintessential example of "other paper," the Court does not find that simply referencing "exploring the possibility of settlement" automatically converts the communication to mere posturing. *See Lowery*, 483 F.3d at 1213 n.62.

While *Towers* cautioned, "[t]he rules are designed to avoid the premature removal of cases on an undeveloped record, and to "encourage defendants to use early discovery to flesh out the amount in controversy," the Court is unconvinced that remanding would frustrate the purpose of

6

28 U.S.C. § 1446(b)). *Id.* at *4 (quoting *Jennings v. Powermatic*, 2014 WL 2003116, at *3 (M.D. Fla. May 15, 2014)). The Court is also mindful that "courts do not permit a defendant to keep its head in the proverbial sand regarding the amount in controversy . . . ." *Garden Terrace APTS. No. 9 Ass'n, Inc. v. W. Heritage Ins. Co.*, 2016 WL 8488924, at *2 (S.D. Fla. Feb. 12, 2016).

The January 21st email unambiguously communicated that the amount in controversy would well exceed $75,000.00. Accordingly, that was the first "other paper" which triggered the 30-day clock and the proper document for Defendant to base the Notice of Removal on. *See Capitini v. Balfour*, 2019 WL 587180, at *2 (S.D. Fla. Jan. 18, 2019) ("the Court does not see why Defendant should be permitted to rely on its apparent willful blindness to extend the removal deadline . . ."). The Court therefore finds that the Notice of Removal was untimely.

IV. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. The Motion to Remand to State Court [**DE 7**] is **GRANTED**.

2. This matter is **REMANDED** to the Circuit Court for the Tenth Judicial Circuit in and for Highlands County, Florida.

3. All other Motions **DENIED AS MOOT**.

4. The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of May, 2020.

KENNETH A. MARRA
United States District Judge

8